## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60054-CIV-DIMITROULEAS/ROSENBAUM

DAVID BELLOSA,
individually and on behalf of
others similarly situated,

      Plaintiff,

vs.

UNIVERSAL TILE RESTORATION, INC.,
a Florida corporation,
and ARI SHAHAR, individually,

      Defendants,

_____/

## ORDER

      This matter comes before the Court upon Defendants' Motion to Compel [D.E. 17].  The

Court has reviewed the Motion, Plaintiffs' Response [D.E. 19], the Reply [D.E. 36], the case file,

and is otherwise fully advised in the premises.  The Court has also heard oral argument from the

parties at a hearing conducted on June 26, 2008.  For the reasons set forth below, Defendant's

Motion to Compel will be granted in part and denied in part consistent with the terms of this Order.

### *BACKGROUND*

      The underlying lawsuit was brought by Plaintiffs for unpaid overtime wages pursuant to the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, *et seq*.  Plaintiffs are former employees of

Defendant Universal Tile Restoration, Inc. ("Universal"), and its owner Defendant Ari Shahar, and

worked for Defendants as technicians.  As such, they reported by 7:30 a.m. every work day to

Defendants' place of business, where they signed out the van and drove to their worksite.  As tile and

marble technicians, Plaintiffs performed their duties away from Defendants' place of business, at job

sites located in people's homes and businesses. Plaintiffs returned the vans to Defendants' place of business at the end of each day.  Plaintiffs, whose regular work hours were 7:30 a.m. to 4:30 p.m., claim that they worked from 20-30 hours of overtime each week, including Saturdays.  Defendants deny that Plaintiffs are due any unpaid overtime wages.

The Motion to Compel now before the Court seeks for the Court to issue an order compelling Plaintiffs to produce documents requested in Defendants' First Notices to Produce and for better answers to their First Set of Interrogatories.  More specifically, Defendants move to compel Plaintiffs to provide more complete responses to Requests for Production 6, 7, 9, 13, 15, 19, and 21, and better responses to Interrogatories 8, 10, and 11.  Defendants assert that the discovery at issue is necessary to assist in refuting Plaintiffs' claims that they worked 20-30 hours of overtime each week.  In this regard, Defendants note that Plaintiffs worked at job sites away from Defendants' place of business and were not supervised at the job sites by Defendants, although Defendants called and visited the job sites from time to time.  Defendants argue that they expect the requested information to show that, in fact, when Plaintiffs claim to have been working overtime, they were actually engaging in personal business or otherwise occupied.  According to Defendants, Defendants received telephone calls from customers complaining that Plaintiffs were not at the job sites when they were supposed to be or were present but were talking on their personal cell telephones.  Additionally, on occasion, Defendants claim to have visited job sites and found Plaintiffs not to be there.  Finally, Defendants assert that other businesses called Defendants to advise Defendants that Defendants' vans were parked at their businesses during business hours, thus, indicating, according to Defendants, that Plaintiffs were shopping or running other personal errands during the time they claim to have been working for Defendants.  In response, Plaintiffs contend that the discovery requests seek irrelevant information, present an undue burden, and that their remote probative value is outweighed by the

2

privacy rights of Plaintiffs.

### DISCUSSION

The Court will set forth the discovery requests below, including the Court's ruling on each.

However, the Court first notes the standard of relevancy upon which this Court must analyze each

request. Rule 26(b), Fed. R. Civ. P., sets forth the permissible parameters of discovery. Under that

rule,

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [that] appears reasonably calculated to lead to the discovery of admissible evidence . . . , [as long as the Court does not find that] (I) the discovery sought is unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. . . ."

R. 26(b), Fed. R. Civ. P. The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of

discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which

may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment,

R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added). Indeed, the Advisory Committee Notes

approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they

should.'" *Id.* (citation omitted).

The courts have long recognized the wide scope of discovery allowed under the Federal

Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme

Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman v. Taylor*, 329

U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).

Of course, the scope of permissible discovery is not unbounded.  Requested discovery must

be relevant, and it must not impose an undue burden, under the tests described in Rule 26(b)(2)(C).

In this regard, even where requested discovery is relevant, the Court may limit it if it determines that

the requested discovery is "unreasonably cumulative or duplicative, or is obtainable from some other

source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i), Fed. R.

Civ. P.; the party seeking discovery has already had "ample opportunity" through other discovery

in the action to obtain the requested information, Rule 26(b)(2)(C)(ii), Fed. R. Civ. P.; or the Court

finds that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into

account the needs of the case, the amount in controversy, the parties' resources, the importance of

the issues at stake in the litigation, and the importance of the proposed discovery in resolving the

issues."  Rule 26(b)(2)(C)(iii), Fed. R. Civ. P.

The Court will now address the discovery requests that are the subject of the Motion to

Compel as discussed at the June 26, 2008, hearing.

**A.      Requests for Production**

**Request for Production 6**:

Request for Production 6 seeks for the period during which overtime compensation is sought,

copies of monthly statements for cellular telephones that show the dates and times that Plaintiffs

---

[1] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

made calls.  Following discussion at the hearing regarding this request for production, Plaintiffs agreed to provide written consent to their telephone service providers, enabling Defendants to obtain from the telephone service providers the information Defendants seek through this request for production.

**Request for Production 7**:

Request for Production 7 seeks credit or debit card statements and receipts, and cash receipts that detail the dates and times Plaintiffs completed purchases.  Defendants explain that they desire this information because they expect it to demonstrate that Plaintiffs were not, in fact, working the entire time for which they claim overtime.  According to Defendants, credit and debit card statements and receipts, which show the dates and times Plaintiffs made purchases, would provide evidence of Defendants' theory and would refute Plaintiffs' overtime claims.  At the hearing, Plaintiffs candidly conceded that if they were not actually working during the time for which they claim overtime, such information would be relevant.  Because credit and debit card receipts and records would provide evidence regarding this matter if, in fact, Plaintiffs were not working during the hours for which they claim overtime, the Court finds the information sought by this request for production to be relevant. Consequently, the Court considers Plaintiffs' other objections to providing such information.

Plaintiffs argue that production of the requested information presents an undue burden on Plaintiffs that outweighs any benefit to the information, and that such information is private financial information and should not be subject to disclosure in the absence of Defendants' showing of a compelling need.  With regard to Plaintiffs' first objection, Plaintiffs did not proffer the number of hours or expense involved in retrieving responsive information, so the Court cannot base a decision not to require production on Plaintiffs' contention that the request for production imposes an undue burden on Plaintiffs.

As for Plaintiffs' second objection – the privacy of the records involved – Plaintiffs refer the Court to cases requiring parties seeking tax records to demonstrate a compelling need for the requested information, beyond mere relevance. Plaintiffs apply this line of cases to all private financial information and assert that Defendants must demonstrate a compelling need before the Court may order production of private financial information.

The undersigned notes that courts are split as to whether tax returns are entitled to heightened protection from discovery. Indeed, the Court notes the case law cited by Plaintiffs that suggests that Defendants must first demonstrate a compelling need for tax information before being granted access to such information. Many courts, including some within this District, have held that in addition to relevance, a compelling need for the information must be shown because tax returns are either privileged, or public policy restricts their disclosure.

The Court understands why courts have come to the conclusion that tax records should be afforded enhanced protection from discovery. In fact, Congress has seen fit to endow tax returns and information with special protections even when sought by federal prosecutors in efforts to enforce criminal laws. *See* 26 U.S.C. § 6103. More particularly, prosecutors are required to apply for and obtain a court order by demonstrating that they have reasonable cause to believe that a criminal act has been committed and that the tax return may be relevant to the case. 26 U.S.C. § 6103(i)(1)(B). Additionally, the judge must determine that the tax information is sought exclusively for use in a federal criminal investigation or proceeding regarding such act, and that the information sought cannot be reasonably obtained from any other source. *Id.* Only upon an order from a judge after making such a finding may a prosecutor obtain tax records for use in certain types of criminal prosecutions. Similarly, Congress has created penalties for a government employee's wrongful disclosure of tax information. Thus, Congress has plainly treated access to personal tax information

with special care not applicable to most types of documents sought through civil discovery.

Nevertheless, the Eleventh Circuit does not require a showing of compelling need before tax information may be obtained by a party in discovery. *See Maddow v. Proctor & Gamble Co., Inc.* 107 F.3d 846 (11th Cir. 1997); *see also U.S. v. Certain Real Property,* 444 F. Supp.2d 1258 (S.D. Fla. 2006)*; Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 2008 WL 728540, *3 (S.D. Fla. 2008). Rather, a requesting party need only show that the information meets the definition of relevance set forth in Rule 26, Fed. R. Civ. P. Recent opinions from the Southern District of Florida reach the same conclusion. *See U.S. v. Certain Real Property*, 444 F. Supp. 2d at 1264-1265; *Platypus Wear*, 2008 WL 728540 at *3 (citing *Gutescu v. Carey Int'l, Inc.*, 2003 WL 25589035, at *3 (S.D. Fla. 2003)). As aptly noted in *Certain Real Property*, "[W]hile this Court recognizes the large amount of caselaw requiring that a compelling need be shown prior to ordering disclosure of tax returns, this Court also notes that in *Maddow*, the Eleventh Circuit was squarely presented with such issue and declined to adopt the higher standard." *Certain Real Property*, 444 F. Supp.2d at 1264.

Because the Eleventh Circuit requires only a showing of relevance, even with respect to tax records, the Court declines Plaintiffs' invitation to apply the compelling need standard to Defendants' Request for Production 7. Accordingly, the Court grants Defendants' Motion to Compel as it relates to Request for Production 7.

**Request for Production 9:**

Request for Production 9 seeks receipts for all banking activities that Plaintiffs carried out and all banking statements that show either dates or times that Plaintiffs performed banking activities, as well as Plaintiffs' banking activities. Defendants observe that when checks are cashed or deposited, banks generally note the date and time of the transaction, as well as the branch location where the transaction occurred. Such information would show whether Plaintiffs made trips to banks

during the hours for which they seek overtime payment, as well as Plaintiffs' locations at the times that they transacted such bank business.  To the extent that such records indicate, for example, that Plaintiffs transacted business at a bank located miles from their designated job sites for that day, the requested information would refute Plaintiffs' claims that they worked for the entire time period for which they seek overtime compensation.

Additionally, Defendants refer the Court to Florida corporate filings, which appear to reflect that  Plaintiff Bellosa incorporated his own competing business while he was still working for Defendants.  Defendants suggest further that Plaintiffs may have worked "on the side," using Defendants' equipment, and, possibly even for Defendants' customers, while Plaintiffs were on the clock for Defendants.  According to Defendants, evidence of such activities would be expected to appear in Plaintiffs' banking records, in the form of memo notations on personal checks or other reflections of significant payments to Plaintiffs from sources other than Defendants.  To the extent that such activities occurred, they would provide evidence that Plaintiffs did not actually work for Defendants the number of hours they claim.

While, as noted above, Plaintiffs concede that to the extent that evidence exists demonstrating that Plaintiffs did not work the number of hours for which they claim overtime, it is relevant, Plaintiffs argue that Defendants can obtain this information in ways that are less burdensome to Plaintiffs than requiring Plaintiffs to provide it.  Specifically, Plaintiffs suggest that Defendants should talk to their customers to learn whether Plaintiffs worked for them "on the side." In response, Defendants argue that engaging in Plaintiffs' recommendation would cause problems for Defendants.  First, many of the people for whom Plaintiffs worked are not happy with the work performed, and, thus, will not be anxious to cooperate with Defendants, according to Defendants. Second, Defendants suggest that it is unlikely that a customer will volunteer that he or she has

allowed one of Defendants' employees to work on the side for the customer, thereby depriving Defendants of business.  Third, as a matter of public relations, Defendants contend that they do not wish to bring their customers into litigation between Defendants and Plaintiffs.  The Court agrees with Defendants that interviewing Defendants' customers does not provide a suitable, less burdensome alternative for Defendants to obtain the information they seek through this request for production.  Moreover, Defendants' customers will not have information regarding Plaintiff Bellosa's alleged competing business or any work that Plaintiffs have allegedly performed for people who are not customers of Defendants.

Plaintiffs also object to producing personal financial information in the absence of Defendants' making of a showing of compelling need.  For the reasons discussed above, however, the Court must deny Plaintiffs' objections in this regard.  Because Defendants have demonstrated the significant relevance of the information sought, and Plaintiffs have not indicated a comparable means for Defendants to obtain this information in the absence of responding to the request for production, Defendants' Motion to Compel is granted with respect to this request for production.

**<u>Request for Production 13</u>**:

Request for Production Number 13 seeks all documents relating to litigation, including traffic and child support proceedings, in which Plaintiffs were a party or a witness, including copies of all complaints, depositions, answers to discovery, trial transcripts, judgments and settlement agreements.  Defendants argue that they need this information for different reasons.  First, any information indicating that a Plaintiff attended a court proceeding while he was supposed to be working would tend to demonstrate that Plaintiffs are not entitled to all of the overtime compensation that they seek.  Second, Defendants seek statements Plaintiffs have made in the course of other litigation, such as deposition testimony and affidavits.  According to Defendants, deposition

9

transcripts might reveal that a Plaintiff has stated that he worked somewhere other than for Defendants during the time period for which Plaintiffs seek overtime compensation.  Additionally, such statements might reveal sources of income from jobs other than with Defendants while Plaintiffs were employed by Defendants.

The Court agrees that to the extent that the requested documents would reveal such information, they meet the definition of "relevancy" set forth by the Federal Rules of Civil Procedure.  Nevertheless, the Court finds Defendants' Request for Production 13 to be overbroad.  Thus, Plaintiffs shall identify by case caption and citation all litigation to which they were parties during the time that they were working for Defendants.  Should Defendants wish to exert their own efforts and expend their own money in investigating filings in these cases, case caption and citation information will enable Defendants to do this.  Additionally, if Plaintiffs participated in any aspect of litigation on a day where they checked in for work, Plaintiffs shall provide documents evidencing attendance at such proceedings.  Finally, if Plaintiffs filed any financial affidavits or gave any financial testimony referring to the period of time during which they were employed by Defendants, Plaintiffs shall provide Defendants with copies of such financial affidavits or testimony.  In all other regards, Defendants' Motion to Compel as it regards Request for Production 13 is denied.  Thus, Defendants' Motion to Compel as it relates to Request for Production 13 is granted in part and denied in part.

**<u>Request for Production 15</u>**:

Request for Production 15 seeks all documents that indicate, reflect or relate to each source of Plaintiffs' income and the amount of income derived from that source, including federal tax returns and all schedules, W-2 and 1099 forms, paycheck stubs, accountant statements, ledgers, and unemployment compensation.  Before addressing the relevancy of the requested information, the

Court notes that Plaintiffs object to these requests, arguing that Defendants have failed to demonstrate a compelling need for the requested information.  For the reasons previously discussed, however, the Court does not sustain Plaintiffs' objections in this respect.

As for relevancy, in support of Request for Production 15, Defendants argue that tax information will reveal any other companies for which Plaintiffs worked while employed by Defendants.  Additionally, Defendants wish to review any Schedule C's that Plaintiffs attached to their tax returns, as such documents list business expenditures to be deducted from taxable income. Defendants assert that any listing of business expenditures would assist Defendants in arguing that Plaintiffs worked at or ran other businesses while employed by Defendants.

In response, Plaintiffs indicate that they are willing to provide all W-2 and 1099 forms, but that the other information requested cannot possibly shed any additional light on the claims and defenses at issue in the pending case.  In this regard, Plaintiffs note that the date of incorporation of Plaintiff Bellosa's allegedly competing business is in January of 2007, and he ceased working for Defendants in March of that same year.  Thus, for Tax Year 2007, even assuming, *arguendo*, that Plaintiff Bellosa worked simultaneously for his own company and Defendants, such overlap would cover only one quarter of the tax year, and be buried among all deductible expenses for the entire year.  Because Schedule C's do not break out when business expenditures are incurred, Plaintiffs assert that they can provide no probative evidence regarding whether any Plaintiffs were working for other businesses at the time that they were employed by Defendants.  As Request for Production 15 relates to the Schedule C's, the Court agrees with Plaintiffs and denies the Motion to Compel in that regard.

With respect to the rest of the information sought by this request for production, the Court finds that the W-2 and 1099 forms are relevant and, if Plaintiffs did, indeed, work for other

companies during their employment with Defendants, such documents are likely to reveal this information.  Thus, to the extent that Plaintiffs are not already doing so voluntarily, the Court orders Plaintiffs to provide such documents to Defendants.  As for accounting records and ledgers reflecting the bases for Schedule C deductions, the Court finds that these documents, unlike the Schedule C's themselves, may have probative value in that they should identify why Plaintiffs took income tax deductions for business expenditures.  As such, these records should reflect more information about the underlying transactions, including the dates on which they occurred and reasons for the transactions.

Similarly, to the extent that paycheck stubs exist for employment other than with Defendants during the period of time for which Plaintiffs seek overtime compensation, such documents are clearly relevant in that they would be expected to show the number of hours worked by Plaintiffs for people other than Defendants.  Since Defendants cannot be in two places simultaneously, any time worked for other employers cannot be time worked for Defendants.  Thus, the Motion to Compel is granted with respect to these documents.

As it pertains to all other documents requested by this request for production, the Court denies Defendants' Motion to Compel.  Any minimal potential relevance is outweighed by the cumulative effect of granting these requests.

**Request for Production 19**:

Request for Production 19 seeks documents which reflect all insurance claims made by Plaintiffs or on Plaintiffs' behalf.  Defendants contend that information regarding insurance claims is relevant because Plaintiffs might have indicated in making such claims that they were incapacitated and unable to work.  Similarly, such records might include documents showing that Plaintiffs were at doctors' appointments and other locations during the time for which they seek

12

overtime compensation. Among other such insurance records, Defendants seek documents relating to worker's compensation claims.

Plaintiffs argue that as Plaintiffs' employers, Defendants already have access to any worker's compensation claims made by Plaintiffs against Defendants, and requiring Plaintiffs to produce them again serves no good purpose. Defendants respond, arguing that one Plaintiff referred to a worker's compensation claim that he indicated he expected to file against Defendants, but Defendants do not yet have any information pertaining to this claim. In considering these arguments and the potential relevancy of the documents requested, the Court orders Plaintiffs to produce documents relating to any worker's compensation claims against Defendants that have not already been filed with Defendants or their insurance carrier, to the extent that such documents evidence any time spent at a doctor's office or otherwise pursuing the worker's compensation claims, during the time period for which Plaintiffs seek overtime compensation. Similarly, any records indicating that a Plaintiff was incapable of working during the relevant time frame shall also be produced. The Motion to Compel is denied in all other respects with regard to Request for Production 19.

**Request for Production 21**:

Request for Production 21 seeks a copy of Plaintiffs' entire passports, and copies of all receipts for hotel, transportation or other travel expenses. During the hearing, Defendants withdrew their request as it related to Plaintiffs' passports. Defendants argue that they require information regarding Plaintiffs' travel during the period for which they seek overtime compensation because Plaintiffs claim overtime compensation for several Saturdays. If Plaintiffs have copies of documents reflecting that they were in Orlando, for example, on Saturdays for which they claim to have been working for Defendants, such information would refute Plaintiffs' overtime compensation claims in this regard. The Court finds such information to be relevant and grants Defendants' Motion to

Compel with respect to the remaining aspects of Request for Production 21.

**B.     Interrogatories**

**Interrogatory 8**:

Interrogatory 8 seeks for Plaintiffs to identify all traffic citations issued to them and court cases in which Plaintiffs were named or appeared as a party or a witness.  For each such citation or court case, Interrogatory 8 demands that Plaintiffs identify the county and state in which Plaintiffs received the citation, or the style and jurisdiction of the court case and the dates upon which they appeared in court.  The Court finds that this interrogatory is subsumed in the information required to be produced by this Order in response to Request for Production 13.  Thus, the Motion to Compel with respect to Interrogatory 8 is denied as cumulative.

**Interrogatory 10**:

Interrogatory 10 seeks for Plaintiffs to identify by card type and account number all credit charge or debit accounts that they held or established and to provide the name and address of the issuer of the credit or debit account.  The discussion of Request for Production 7 addresses the parties' arguments with respect to this interrogatory.  For the same reasons that the Court grants Defendants' Motion to Compel as it relates to Request for Production 7, the Court grants Defendants' Motion to Compel as it regards Interrogatory 10.

**Interrogatory 11**:

Interrogatory 11 seeks for Plaintiffs to identify all banks or credit unions in which they held accounts and for each such bank or credit union, provide the address of the branches at which they banked, as well as their account numbers.  The interrogatory also instructs that if Plaintiffs did not hold bank accounts, Plaintiffs should provide the names and addresses of all places Plaintiffs used

for check cashing services or pay day loans.  The discussion of Request for Production 9 addresses the parties' arguments with respect to this interrogatory.  For the same reasons that the Court grants Defendants' Motion to Compel as it relates to Request for Production 9, the Court grants Defendants' Motion to Compel as it pertains to Interrogatory 11.

***CONCLUSION***

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Compel [D.E. 17] is **GRANTED IN PART AND DENIED IN PART** consistent with the terms of this Order.  Plaintiff shall produce all required documents and supplemental responses to interrogatories to Defendants within seven days of the date of this Order.

**DONE** and **ORDERED** at Fort Lauderdale, Florida this 30th day of June, 2008.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    Honorable William P. Dimitrouleas
        counsel of record